CHRISTOPHER M. YOUNG (Bar No. 163319)
christopher.young@dlapiper.com
KIMBERLY S. HYDE (Bar No. 274623)
kimberly.hyde@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

Attorneys for Defendant
Specially-Appearing Oleofarm Sp. z o.o.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>OLEOFARM SP. ZO.O., a Polish Corporation, and DOES 1 through 10,<br><br>Defendant. | CASE NO.  3:17-cv-01088-BEN-WVG<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF SPECIALLY-APPEARING DEFENDANT OLEOFARM SP. Z O.O. TO DISMISS COMPLAINT**<br><br>**Fed. R. Civ. P. 12(b)(2); 12(b)(3); 12(b)(1)**<br><br>Date:    December 11, 2017<br>Time:   10:30 a.m.<br>Dept:    5A (5th Floor – Schwartz)<br>Judge:  Hon. Roger T. Benitez |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1
II. NO SPECIFIC JURISDICTION EXISTS OVER OLEOFARM ................. 2
    A. Burger King Only Confirms California's Lack of Jurisdiction. ........... 2
    B. Plaintiff Ignores the Actual Burger King Test ..................................... 3
    C. Fastpath and Walden Are Determinative ............................................. 5
III. PLAINTIFF DOES NOT DISPUTE THAT POLAND IS A SUITABLE ALTERNATIVE FORUM ........................................................ 6
    A. Plaintiff Overstates the "Burden" Requirement ................................... 6
    B. Plaintiff Has Offered No Evidence to Refute the Adequacy of a Polish Court ......................................................................................... 8
    C. The Public and Private Interest Factors Strongly Favor a Polish Forum. ................................................................................................. 9
IV. PLAINTIFF HAS FAILED TO PROVE THE AMOUNT IN CONTROVERSY HAS BEEN MET ........................................................... 9
V. CONCLUSION ......................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amur Sp. Z.o.o v. FedEx Corp.*,
 684 F. App'x 554 (6th Cir. 2017) ................................................................................ 8

*Banco Latino v. Gomez Lopez*,
 17 F. Supp. 2d 1327 (S.D. Fla. 1998) .......................................................................... 7

*Barnstormers, Inc. v. Wing Walkers, LLC*,
 2010 WL 2754249 (S.D. Cal. July 9, 2010) ................................................................ 9

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ........................................................................................ 1, 2, 3, 4

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
 136 F. Supp. 2d 1271 (S.D. Fla. 2001) ........................................................................ 8

*Dorfman v. Marriott Intern. Hotels, Inc.*,
 2001 WL 69423 (S.D.N.Y Jan. 29, 2001) ................................................................... 7

*Fastpath, Inc. v. Arbela Technologies Corp.*,
 760 F.3d 816 (8th Cir. 2014) ................................................................................... 5, 6

*In re Ford Motor Co.*,
 591 F.3d 406 (5th Cir. 2009) ................................................................................... 2, 8

*Joy Family Ltd. Partnership v. United Fin, Banking Co.*,
 2013 WL 44647321 (D. M.D. August 23, 2013) ........................................................ 9

*Lockman Foundation v. Evangelical Alliance Mission*,
 930 F.2d 764 (9th Cir. 1991) ................................................................................... 6, 7

*Mercier v. Sheraton International, Inc.*,
 935 F.2d 419 (1st Cir. 1991) ........................................................................................ 8

*U.S. Vestor, LLC v. Biodata Information Tech. AG*,
 290 F. Supp. 2d 1057 (N.D. Cal. 2003) ....................................................................... 7

*Vivendi S.A. v. T-Mobile USA Inc.*,
 586 F.3d 689 (9th Cir. 2009) .............................................................................. 2, 7, 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014) ............................................................................. 1, 4, 5, 6

-iii-

DLA PIPER LLP (US)
SAN DIEGO

WEST\278972748.1

REPLY ISO MOTION TO DISMISS
CASE NO. 3:17-cv-01088-BEN-WVG

## I. INTRODUCTION

In 2014, the United States Supreme Court held that to exercise specific jurisdiction over a defendant, the "plaintiff *cannot* be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis added). The present case presents precisely this circumstance, and should be dismissed for lack of personal jurisdiction over Specially-Appearing Defendant Oleofarm Sp. z o.o. Apart from its discrete, limited contacts with Plaintiff Certified Nutraceuticals, Oleofarm has no other connections with California (or even the United States) that could support the exercise of jurisdiction by this Court.

In opposing this motion, Plaintiff Certified Nutraceuticals dwells on the parties' alleged two-year email relationship and the "2.7 tons of products" it sent to Oleofarm. In truth, while the subject product is sold and shipped in bulk, Oleofarm only made three isolated purchases from Certified Nutraceuticals over a seven-month period. As discussed in Oleofarm's moving papers, the additional 17 months of intermittent email communications between the parties concerned Certified Nutraceuticals' difficulty obtaining the necessary Polish customs documents to ship its products to Oleofarm, and later Certified Nutraceuticals' unilateral efforts to solicit additional business from Oleofarm. But Oleofarm had no commitment, let alone an ongoing one, to purchase additional products from Certified Nutraceuticals beyond the three discrete orders, and Oleofarm declined to do so. Oleofarm only connected with Certified Nutraceuticals in the first place after Oleofarm made a blind inquiry to an online marketing website. Oleofarm did not deliberately reach out to California to contact the Plaintiff as required under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). In short, specific jurisdiction does not exist here.

Moreover, even if jurisdiction did exist here (which it does not), Oleofarm requests that this Court nevertheless dismiss the case under the doctrine of forum non conveniens. Poland is a suitable alternative forum, as Plaintiff notably does not dispute in opposing this motion. Indeed, rather than contest Poland's suitability as

a forum, Certified Nutraceuticals only argues that Oleofarm has not provided expert affidavits proving a Polish court could adjudicate this breach of contract dispute. Contrary to Plaintiff's position, the forum is considered adequate if Oleofarm is amenable to service in Poland and agrees to jurisdiction there.  In any event, expert affidavits are not critical when other courts have approved adequacy of the foreign forum, as has occurred for Poland. *See In re Ford Motor Co.*, 591 F.3d 406, 413 (5th Cir. 2009); *Vivendi S.A. v. T-Mobile USA Inc.*, 586 F.3d 689 (9th Cir. 2009). The present case is properly dismissed, and litigated (if at all) in Poland.

Finally, Certified Nutraceuticals has not met its burden in proving the amount in controversy has been satisfied.  Despite Oleofarm's showing on this motion that it manufactured Collaflex years before meeting Certified Nutraceuticals, Plaintiff has offered no evidence in response to support its claimed damages, as Plaintiff must do once the amount in controversy has been challenged.  Plaintiff's attempt to re-write its Complaint in opposing this motion by asserting new, speculative, and unalleged damages that supposedly it "may" be able to recover is wholly inadequate.  For this reason, subject matter jurisdiction is also lacking, and Oleofarm requests that the case be dismissed on this basis as well.

## II.   NO SPECIFIC JURISDICTION EXISTS OVER OLEOFARM

### A.   *Burger King* Only Confirms California's Lack of Jurisdiction.

Plaintiff relies heavily on the 1985 U.S. Supreme Court case of *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) to argue that specific jurisdiction exists over Oleofarm.  In *Burger King,* however, the Supreme Court found sufficient contacts because the defendant "deliberately reach[ed] out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise," and proceeded to enter into a carefully structured "20-year relationship" with the Florida company. *Id.* at 479-80.  In light of the defendant's "voluntary acceptance" of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the Supreme Court found that the relationship could not be viewed as

"random," "fortuitous," or "attenuated." *Id.* at 480.

Here, Certified Nutraceuticals hangs its hat on an out-of-context statement by an Oleofarm employee who said she would "do everything I can to become your exclusive distributor in EU." Plaintiff claims that this showed that Oleofarm "clearly *envisioned* a long-term relationship with CN." (Opposition, at 8:3.) But this vaguely-expressed sentiment (unaccompanied by any actions, or even other statements, tending to create such a relationship) cannot suffice. Politely stating that one wishes or "envisions" a long-term relationship does not create one.

To put this situation on the same footing as that in *Burger King,* Oleofarm would have to have deliberately reached out to Certified Nutraceuticals and agreed to purchase a specific amount of product over many years. Instead, Oleofarm was only incidentally put into contact with Certified Nutraceuticals by Infiniti Marketing Group after Oleofarm's blind inquiry. (Mot. to Dismiss, at 3:9-17.) Had Oleofarm been connected instead to a different supplier of raw collagen by the marketing website, Oleofarm would have likely never done business with Plaintiff at all. In other words, the relationship was entirely "fortuitous." *Burger King*, 471 U.S. at 480. Moreover, Oleofarm never agreed to purchase *any* amount of product from Certified Nutraceuticals, nor was it bound by a "long-term" relationship. It only entered into an initial non-disclosure agreement while it was testing Certified Nutraceuticals' products. (Mot. to Dismiss, at 4:2-7; Suchuszek Decl., ¶ 10.) Despite Plaintiff's reliance on the case, *Burger King* is not at all similar to the facts here.

### B.  Plaintiff Ignores the Actual *Burger King* Test

Although Certified Nutraceuticals claims in opposition that the facts of *Burger King* are comparable to those here, Plaintiff fails to actually address the three-prong test that was established by *Burger King* to determine whether the exercise of specific jurisdiction is appropriate over a foreign entity. As detailed in Oleofarm's moving papers, these factors all work in Oleofarm's favor, and against the exercise of jurisdiction. (Mot. to Dismiss, at 8:3-7.)

(1) *First,* Oleofarm has not **purposefully directed** its activities toward residents in California nor has it created a "continuing obligation." *Burger King,* 471 U.S. at 475. To satisfy this requirement, plaintiff must present some evidence that the nonresident "performed some act or consummated some transaction" within California that the "defendant *himself* created"—it is not alone sufficient that defendant knew that plaintiff was a forum resident. *See Walden*, 134 S. Ct. at 1122. But Certified Nutraceuticals has offered absolutely none. If anything, it was Certified Nutraceuticals that purposefully reached out to do business with Oleofarm, not the other way around. Oleofarm was fortuitously put into contact with Certified Nutraceuticals and then entered a Confidentiality Agreement *in Poland* that led to three isolated purchases. Although Certified Nutraceuticals may have wanted a long-term relationship, it never materialized.

Certified Nutraceuticals emphasizes an alleged "two-year" relationship where Mr. Alkayali and Ms. Janowska "communicated by email on a regular basis" to purportedly demonstrate Oleofarm's "continuing obligation." (Opposition, at 6:5 & 9:2.) But the two years of alleged ongoing communications (which were hardly "regular" during that entire period) took place only because (1) Certified Nutraceuticals could not figure out how to obtain the veterinary certificate to get its products through Polish customs, which resulted in a number of emails between Mr. Alkayali to Ms. Janowska and delayed purchase and shipment for nearly one year, and (2) Mr. Alkayali engaged in efforts from late 2015 to May 2016 to solicit further business after Oleofarm's interest in the products dwindled. Oleofarm, in truth, only made three discrete purchases over a seven-month period from Certified Nutraceuticals. This does not equate to a "continuing obligation" created by "a structured 20-year relationship." *See Burger King,* 471 U.S. at 480.

(2) *Second,* Certified Nutraceuticals' claim must **arise out of** or result from Oleofarm's contacts which are related to the forum, California. *Id.* But apart from the happenstance that Certified Nutraceuticals was a registered California

company, Oleofarm had no contacts with California. It has never visited California. It did not, and does not, market in California. It does not conduct business in California. What is more, Certified Nutraceuticals' cause of action for breach of the Confidentiality Agreement arises out of Oleofarm's purported actions *in Poland*, not California. The agreement was entered by Oleofarm in Poland. The complaint asserts that Oleofarm "manufactures, advertises and offers for sale the product, 'Collaflex,'" but as shown in Oleofarm's moving papers, Oleofarm does not sell, advertise or market in California, and Plaintiff has not produced any conflicting evidence. (Dkt. No. 1 at 6, 8.) In sum, despite Plaintiff's attempt to obfuscate the issue, Oleofarm has never had any contact with California other than to purchase a bulk product which Plaintiff shipped from California, and to exchange emails with Mr. Alkayali while he presumably was located in California.

(3) *Third*, the Court's exercise of personal jurisdiction must be reasonable and must comport with "fair play and substantial justice." Yet Plaintiff asks the Court to ignore the burden placed on a Polish company to litigate in California when it has never entered the forum, has no offices or other connection here, and whose only contacts were emails to a business that, as far as Oleofarm knew, could have been located anywhere. Under these circumstances, requiring Oleofarm to litigate in the United States would violate principles of fair play and substantial justice.

**C.    *Fastpath* and *Walden* Are Determinative**

As described in Oleofarm's moving papers, both *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816 (8th Cir. 2014) and *Walden v. Fiore*, 134 S. Ct. 1115 (2014) are determinative here. *Fastpath*, in particular, involved a similar claim for breach of a non-disclosure agreement that contained a choice-of-law provision. In opposition, Certified Nutraceuticals argues that *Fastpath* is distinguishable because the plaintiff there never provided any "tangible products" to defendant and never did any business with them. (Opposition, at 8:17-18.) But the lack of business in the forum state (Iowa) was not why the *Fastpath* court

1  declined to exercise jurisdiction over the defendant. 760 F.3d at 821-24. The court
2  did so because the agreement in question did not "specifically contemplate the
3  exchange of information" in the forum, because "no information exchange took
4  place in Iowa," and "any alleged breach of the Agreement" occurred outside the
5  forum. *Id.* at 822. That is precisely the case here.

6  Plaintiff also claims that *Walden* is distinguishable because it involved a
7  single interaction at the Atlanta airport. But the critical point in *Walden* is the
8  Supreme Court's clarification that the minimum test looks to "defendant's contacts
9  with the forum state itself, not the defendant's contacts with the persons who reside
10 there." 134 S. Ct. at 1122. Here, Oleofarm has no other contacts with California
11 apart from its relationship with Mr. Alkayali of Certified Nutraceuticals, bringing
12 this situation directly within the holding of *Walden*.

13 In short, Certified Nutraceuticals cannot satisfy the Supreme Court's
14 minimum contacts test for the exercise of personal jurisdiction over Oleofarm.

### III. PLAINTIFF DOES NOT DISPUTE THAT POLAND IS A SUITABLE ALTERNATIVE FORUM

No personal jurisdiction exists over Oleofarm in California. But even if this Court were to decide it can exercise its jurisdiction, Oleofarm respectfully requests that this Court refrain from doing so and dismiss the case because Poland is the more convenient forum. An alternative forum is deemed adequate if (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy. *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991).

#### A. Plaintiff Overstates the "Burden" Requirement

In opposition, Certified Nutraceuticals takes issue with Oleofarm's lack of "an affidavit regarding the laws of Poland," and asserts that Oleofarm has failed to carry its burden showing Poland law is an adequate alternative. But the requirement that the alternative forum provide some remedy is "not a heavy one."

*Dorfman v. Marriott Intern. Hotels, Inc.*, 2001 WL 69423 (S.D.N.Y Jan. 29, 2001). If a defendant is subject to service of process and submits to jurisdiction, then the alternative forum is adequate. *See Lockman,* 930 F.2d at 768.

In *U.S. Vestor, LLC v. Biodata Information Tech. AG*, 290 F. Supp. 2d 1057, 1068 (N.D. Cal. 2003), for instance, the court found Germany to be an adequate alternative solely on the ground that defendants were amenable to service there. In *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331-32 (S.D. Fla. 1998), the court dismissed the case in favor of Venezuelan courts based on assertions by the defendant that the Venezuela was the "superior forum," despite plaintiffs' rebuttal contention that the court system is "rampant with delays." The court observed that it is "not the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation." *Id.*

Here, it is undisputed that Oleofarm is amenable to service in Poland, as it was already served in Poland with the instant action. (*See* Dkt. No. 4.) Oleofarm would also submit to jurisdiction in Poland. For these reasons alone, the forum should be considered adequate.

Additionally, by citing the Ninth Circuit opinion, *Vivendi S.A. v. T-Mobile USA Inc.*, Oleofarm *did* provide evidence that Poland is an adequate alternative forum, as the Court may rely on judicial precedent in making a determination on appropriateness of the forum. Although Certified Nutraceuticals asserts that *Vivendi* is distinguishable because it involved a "RICO civil action …not a breach of non-disclosure agreement," if the *Vivendi* court found that there was an adequate remedy under Polish law to adjudicate a complex, high-stakes RICO claim, there seems little doubt that a Polish court could adjudicate a breach of contract claim.[1]

---

[1] In further response to Plaintiff's assertion that *Vivendi* is inapposite because it was not a breach of contract action, the findings and evidence in *Vivendi* extended beyond tort matters into the adequacy of Polish procedures to hear disputes. As set forth in the Declaration of Professor Wojciech Popiolek, "under Polish law, an injured party is entitled to recovery in the amount of damage caused (the principle of full compensation)." *Vivendi S.A. v. T-Mobile USA*, Case No. 2:06-cv-01524-

-7-

Tellingly, on appeal to the Ninth Circuit in *Vivendi*, the plaintiff did not even argue that the district court abused its discretion when it concluded that Poland was an adequate alternative forum. *Vivendi*, 586 F. 3d at 693 n. 9.

### B. Plaintiff Has Offered No Evidence to Refute the Adequacy of a Polish Court

Certified Nutraceuticals relies on outdated case law – *Mercier v. Sheraton International, Inc.*, 935 F.2d 419, 423 (1st Cir. 1991) and *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1277-78 (S.D. Fla. 2001)—to suggest that Oleofarm should have produced expert declarations on Polish law to determine whether the courts of Poland are able to adjudicate a single breach of contract dispute. Not only do *Mercier* and *Del Monte* never expressly state that defendants are *required* to obtain expert affidavits, but Plaintiff overlooks more recent authority holding the opposite. In *Ford Motor Co.*, *supra*, the Fifth Circuit observed:

> District courts do not have to start from scratch each time they consider a forum's availability; if we have found a forum to be available in earlier cases, district courts can rely on our precedent in similar cases to hold that is still available. Unless *plaintiffs* case show evidence distinguishing this case from our precedent . . . plaintiff cannot prevail in their [forum non conveniens] defense. Because no such evidence was presented, the transferee and transferor courts clearly erred in refusing to grant the FNC dismissal." 591 F.3d at 413.

Because courts may "rely on [their] precedent" to determine the adequacy of an alternative forum, Oleofarm correctly submitted that, based on the Ninth Circuit *Vivendi SA* decision, this Court may determine without "starting from scratch" that Polish courts are an adequate forum. *See also Amur Sp. Z.o.o v. FedEx Corp.*, 684 F. App'x 554, 555 (6th Cir. 2017) (Poland adequate alternative forum).

In opposing this motion, Plaintiff offered no argument to refute Poland's suitability, nor did it suggest that Poland would not be able to adjudicate the breach

---

JLR [Dkt. 91]. He also stated that under Article 8 of Polish Private International law, "foreigners may have rights and duties in Poland equal to those of Polish citizens" and Polish procedural law accepted witness testimony and a catalogue of evidence. All of this evidence would have informed the court's opinion that Poland was a suitable alternative forum.

of contract claim.  In light of Plaintiff's omission, the Polish court should be deemed an adequate alternative forum.[2]

### C. The Public and Private Interest Factors Strongly Favor a Polish Forum.

Certified Nutraceuticals asserts in opposition that "modern means of communication" can remedy concerns over the location of evidence and witnesses in Poland, and that "both parties would incur translation costs, regardless of the forum."  But Certified Nutraceuticals does not address the eventuality of a trial in California, where Oleofarm would need to introduce its own live witnesses.  Only two Oleofarm employees even have visas to enter the United States, and the costs associated with applying for and obtaining visas for relevant witnesses and travel expenses are highly burdensome.  Because the "[t]he relative convenience to witnesses is often recognized ***as the most important factor to be considered****,"* these factors also support adjudication in Poland.  *Barnstormers, Inc. v. Wing Walkers, LLC,* 2010 WL 2754249, at *2 (S.D. Cal. July 9, 2010) (emphasis added).

### IV. PLAINTIFF HAS FAILED TO PROVE THE AMOUNT IN CONTROVERSY HAS BEEN MET

"In the face of defendant's challenge [to the amount in controversy], plaintiff must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold of $75,000."  *See Joy Family Ltd. Partnership v. United Fin, Banking Co.,* 2013 WL 44647321, at *7 (D. M.D. August 23, 2013).

In the Complaint, Plaintiff asserts that it has been damaged by Oleofarm's "use [of] Proprietary Information to develop and manufacture its own avian chicken Collagen Type II product [Collaflex]."  (Dkt. No. 1, ¶¶ 24 & 25.)  In its moving papers, Oleofarm submitted evidence that it manufactured the product Collaflex

---

[2] Although Oleofarm maintains that any additional evidence is not necessary for the Court to determine that Poland is a suitable forum, to remove any lingering doubt, Oleofarm herewith submits an affidavit from dr Andrzej Balicki, an attorney in Poland, addressing the issue.  (*See* Declaration of dr Andrzej Balicki.)

*years before* ever having any dealings with Certified Nutraceuticals. (*See* Suchoszek Decl. at ¶ 5; Dkt. No. 1 at 8.)  Plaintiff has offered no evidence rebutting Oleofarm's, or showing that it has suffered any actual harm.  Instead, Certified Nutraceuticals speculates that "restitution *may be* an appropriate remedy" and "*may* come in the form of the money saved by the defendant in relying or utilizing confidential information." (Opposition, at 14:9-13) (emphasis added).  Plaintiff mentions that it has spent approximately $5,000,000 "to develop KollaGen II-SX, which *may be* a part of a measure of restitution." (*Id.* at 15:23-24) (emphasis added).  But nowhere in Plaintiff's complaint does it actually allege that this $5,000,000 of restitutionary damages is related to its development costs, and has not supported its speculative damages figures with anything other than bare argument.[3]  Plaintiff has not met its burden to prove, by a "preponderance of the evidence," that the jurisdictional threshold has been satisfied.

Because Plaintiff has failed to meet its burden, Oleofarm respectfully requests that the Court dismiss the case for the additional reason that there is no subject matter jurisdiction.

## V.  CONCLUSION

For the reasons set forth above and in its moving papers, Specially-Appearing Oleofarm respectfully requests that the Court dismiss Plaintiff's complaint.

Dated:  December 4, 2017

Respectfully submitted,

DLA PIPER LLP (US)

By:  */s/ Christopher M. Young*
CHRISTOPHER M. YOUNG
KIMBERLY S. HYDE
Attorneys for Defendant
Oleofarm Sp. z o.o.

---

[3] Plaintiff also raises that it may claim *damages* in "licensing fees," but there is no suggestion in the Complaint showing that Oleofarm gave a license for Certified Nutraceuticals' products. (Opposition, at 15:4-8.)  Plaintiff may not amend its Complaint by way of its opposition to a motion to dismiss.