UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTIFIED NUTRACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OLEOFARM SP. Z O.O., <br><br> Defendant. | Case No.: 3:17-cv-1088-BEN-WVG <br><br> **ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Before the Court is the Motion to Dismiss filed by Defendant Oleofarm Sp. z o.o ("Oleofarm"). (Docket No. 6.) The motion is fully briefed. Because the Court finds it lacks personal jurisdiction over Oleofarm, the motion is **GRANTED**.

## BACKGROUND[1]

Plaintiff Certified Nutraceuticals, Inc. ("Certified") is a California corporation with its principal place of business in Pauma, California. Certified is a world renowned and trusted industry leader in the development and manufacturing of nutritional ingredients, which are sold worldwide to formulators of nutraceuticals and dietary supplements. It specializes in quality collagen nutritional ingredients, having pioneered the original

---

[1] The following overview of the facts are drawn from the allegations of Plaintiff's Complaint. The Court is not making factual findings.

invention of three Collagen Type II patents for dietary supplements, and being the first to introduce Collagen Types I, II, and III food supplements to the market. Certified also created the patented KollaGen II-XS, a Collagen Type II food supplement, which is used to reduce joint pain and inflammation.

Defendant Oleofarm is a limited liability company organized under the laws of and with its principal place of business in the country of Poland. Its business is purportedly focused on the research, production, and sale of high-quality food supplements, dietary foods for special medical purposes, pharmaceutical raw materials and healthy food, including cold pressed oils.

On June 6, 2014, Certified and Oleofarm entered into a Confidentiality Agreement ("Agreement"), whereby Certified agreed to disclose certain "confidential, important, and/or proprietary" information to Oleofarm as part of a potential transactional or relationship between the parties. (Compl. ¶ 18.) Oleofarm agreed to only use the confidential information for "evaluating a possible transaction or relationship" with Certified, and to not "use the Confidential Information to the detriment" of Certified. (*Id.* ¶ 20.) Relying on the Agreement, Certified disclosed to Oleofarm "highly confidential and proprietary information and material regarding its product, KollaGen II SX [sic], including, but not limited to, United States patent information, composition, and analysis information, flow chart, method of analysis and validation, clinical studies, recommendations for encapsulation, and at least 2,400 kg. of KollaGen II SX [sic] Avian (Chicken) Collagen Type II Powder (collectively, "the Proprietary Information")." (*Id.* ¶ 21.)

Certified alleges Oleofarm subsequently breached the Agreement by using the Proprietary Information to develop and manufacture its own avian chicken Collagen Type II product. It filed this action seeking damages and injunctive relief for breach of the Agreement. Oleofarm now moves to dismiss Certified's on lack of personal jurisdiction, forum non conveniens, and lack of subject matter juridiction grounds. (Docket No. 6.)

# LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.,* 704 F.3d 668, 671-72 (2012). Where the motion is based on written materials and affidavits rather than an evidentiary hearing, a plaintiff is only required to make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004)). In determining whether a plaintiff has met her burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588-89 (9th Cir. 1996) (quoting *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989) (internal citations omitted)).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations omitted). California's long-arm statute permits its courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." *Daimler AG v. Bauman,* 134 S. Ct. 746, 753 (2014) (quoting Cal. Civ. Proc. Code § 410.10). Thus, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," and the Court must ensure that its assertion of personal jurisdiction over a party comports with the limits imposed by federal due process. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 464 (1985)). Due process requires that nonresident defendants have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, SA. v.*

*Brown,* 564 U.S. 915, 923 (2011) *(quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984).

Oleofarm argues that Certified has not met its burden to show that this Court has specific jurisdiction over it.[2] The Court agrees.[3]

**DISCUSSION**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation omitted)). For specific jurisdiction to exist, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121; *see also Nissan Motor Co. Ltd. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) ("Specific personal jurisdiction may be exercised when the nature and quality of the defendant's contacts with the forum state are significant in relation to the specific cause of action.") (internal quotation and citation omitted). This connection "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). A defendant's affiliation with the plaintiff, or with persons who reside in the forum, standing alone, is insufficient to confer specific jurisdiction. *Id.* at 1122-23.

In the Ninth Circuit, a district court "will exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either 'purposefully direct[s]' its activities or 'purposefully avails' itself of the benefits afforded

---

[2] Although Oleofarm also moved to dismiss for lack of general jurisdiction, Certified's opposition did not address this argument. Therefore, the Court concludes Certified implicitly concedes this issue.

[3] Because the Court finds personal jurisdiction over Oleofarm lacking, it declines to decide Oleofarm's alternative grounds for dismissal.

by the forum's laws; (2) the claim 'arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is] reasonable.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

The plaintiff bears the burden of satisfying the first two prongs of this specific-jurisdiction test. *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995)).

1. <u>Purposeful Availment</u>

For cases sounding in contract, courts generally apply the purposeful-availment analysis. *Schwarzenegger*, 374 F.3d at 802. "An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident." *HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665 (9th Cir. 2011) (citing *Burger King*, 471 U.S. at 478); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) ("[T]he existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident."). "Rather, there must be actions by the defendant himself that create a 'substantial connection' with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (internal quotation marks and emphasis omitted). Merely "random, fortuitous, or attenuated" contacts are not sufficient. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).

Where, as here, the exercise of personal jurisdiction over a defendant is based on the execution or performance of a contract, the court must "use a highly realistic

approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and citation omitted); *see also Schwarzenegger*, 374 F.3d at 802 ("The appropriate analysis for a suit 'sounding in contract' focuses on the presence of 'purposeful availment.'"). Thus, to determine whether a party to a contract has purposefully established the requisite minimum contacts with the forum, a court should look at four factors: (1) prior negotiations; (2) contemplated future consequences; (3) the terms of the contract; and (4) the parties' actual course of dealings. *Burger King*, 471 U.S. at 479. More specifically, "[t]o have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (internal citation and quotation marks omitted).

Oleofarm argues the Court lacks specific jurisdiction over it because its activities within California "are non-existent" as it "has not conducted business or other activities in the State of California." (Mot. at p. 8.) It provided evidence in the form of a declaration from one of its Management Board members that Oleofarm "does not sell its dietary supplements or other products in the United States, either directly or indirectly" and "has no business, agents, property, or advertising located within or directed at the State of California." (*See* Declaration of Dr. Katarzyna Suchoszek ¶ 3.) As to the Agreement, it was "made" in Poland because Oleofarm executed the Agreement in Poland and has never visited California.[4] (*Id.* ¶¶ 4, 10.) Additionally, "[t]he only time

---

[4] Plaintiff did not contest this fact in its opposition. *See Jhirmack Enters., Inc. v. Superior Court*, 96 Cal. App. 3d 715, 723 (1979) ("The last act necessary to the validity of a contract, usually the act constituting acceptance, is the place of its making." (citing *Braunstein v. Superior Court*, 225 Cal. App. 2d 691, 696 (1964)).

6

Oleofarm employees have visited the United States on business was in November 2013 and October 2015, for trade shows in Las Vegas, Nevada." (*Id.* ¶ 4.)

In response, Certified contends specific jurisdiction exists because "Oleofarm continuously communicated with [Certified] for approximately two years with the intention that Oleofarm would become [Certified's] exclusive distributor, signed a non-disclosure agreement ("NDA") identifying the laws of California as the choice of law governing Oleofarm's disposition of [Certified's] products, and purchased product from [Certified] and knowing that [Certified] conducted business in California." (Opp'n at p. 4.) None of these facts, either individually or collectively, is sufficient to establish specific jurisdiction over Oleofarm.

First, Certified acknowledges, as it must, that the Agreement alone, regardless of where is was "made" cannot establish specific jurisdiction. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Although Oleofarm does not deny that the Agreement contains a choice of law provision designating California law, Oleofarm's consent to the choice of law provision alone is not equivalent to consent to jurisdiction in California.

Second, Certified's reliance on *Burger King* is misplaced. In *Burger King*, the Supreme Court concluded that although the defendant did not have physical ties and may never even have traveled to Florida (the forum state), his contacts with Florida were sufficient to establish specific jurisdiction because: (1) the "franchise dispute grew directly out of 'a contract which had substantial connection with that State'"; (2) the defendant "deliberately 'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization"; (3) the defendant "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* at 479-480 (internal citations omitted

and emphasis added in original). The *Burger King* court concluded that "[i]n light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Id.* at 480 (quoting *Hanson v. Denckla,* 357 U.S., at 253; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. at 774; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 299). Additionally, the defendant's refusal to pay in accordance with the contract while continuing to receive its benefits, caused foreseeable injuries to the corporation in Florida. Thus, "[f]or these reasons it was, at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries." *Id.* at 480.

Here, Certified provided evidence that Oleofarm's Purchasing Manager, Marzena Janowska, communicated via email with Certified's Vice-President, Abdul S. Alkayali, for approximately two years, and stated in an email she would "do 'everything' she could 'to become [Certified's] exclusive distributor in EU.'" (Declaration of Abdul S. Alkayali ¶ 3.) However, unlike the long-term contract envisioned in *Burger King*, this contract never came into fruition. It naturally follows that, in the absence of such a contract, Oleofarm did not expect to receive any benefits from California and that there can be no foreseeable injuries to Certified.

Third, Certified's evidence that Oleofarm made three purchases of its Kollagen II-XS product is simply not relevant to the Court's analysis. The parties agree that Oleofarm purchased Certified's product to be sent *from* California *to* Poland. In any event, Certified's breach of contract claim does not "arise out of" these purchase contracts,[5] and Certified did not submit any other evidence that Oleofarm "performed

---

[5] Indeed, these purchases are not even mentioned in the Complaint.

8

some type of affirmative conduct which allows or promotes the transaction of business *within the forum state*."[6] *Boschetto*, 539 F.3d at 1016 (emphasis added).

In sum, the only relevant evidence proffered by Certified to establish Oleofarm's purposeful availment of the privileges of conducting activities in California are the two years of email correspondence between its Vice-President and Oleofarm's Purchasing Manager. Therefore, the Court finds Certified has only established contacts "with persons who reside" in California, rather than "with the forum State itself," which is insufficient to establish specific jurisdiction over Oleofarm. *Williams*, 851 F.3d at 1023. As a result, Certified has failed to meet its burden to establish the first prong of the three-part test, and the Court need not determine the remaining prongs. Accordingly, Oleofarm's motion to dismiss for lack of jurisdiction is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Oleofarm's motion to dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED without prejudice** for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: March 9, 2018

Hon. Roger T. Benitez
United States District Judge

---

[6] In fact, although the Complaint alleges Oleofarm "directly or through its intermediaries (including other distributors and retailers), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised its products in the United States, the State of California and this district," Oleofarm's evidence refutes this allegation and Certified's opposition is silent on this issue. Thus, the Court concludes Certified concedes this argument.